M. I. Moore v. Commissioner.
Moore v. Commissioner
Docket No. 77435.
United States Tax Court
T.C. Memo 1959-233; 1959 Tax Ct. Memo LEXIS 12; 18 T.C.M. (CCH) 1119; T.C.M. (RIA) 59233; December 14, 1959
*12 Lyman G. Friedman, Esq., and Fred Mitchelson, Esq., National Bank Building, Pittsburg, Kan., for the petitioner. Sylvan Siegler, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner determined a deficiency in the income tax of petitioner for the taxable year 1954 in the amount of $2,890.30. Petitioner claims an overpayment in her income tax for the year 1954 in the amount of $2,012.87. The issue for determination is whether the fair market value of an undivided onehalf interest in certain real property received by petitioner as a liquidating dividend on October 30, 1954, was not less than $50,125. Findings of Fact Petitioner is a widow and a resident of Pittsburg, Kansas. Her Federal income tax return for the taxable year 1954 was filed with the district director of internal revenue at Wichita, Kansas. Petitioner was the owner of 50 per cent of the capital stock of The Pittsburg Improvement Company, hereinafter sometimes referred to as the corporation. The remaining 50 per cent of the corporation's stock was owned by Arilla R. Moore, petitioner's sister-in-law, and Edwina King, the daughter of Arilla Moore. *13 Among the assets owned by the corporation were the land and building located at the northeast corner of Seventh and Broadway Streets, Pittsburg, Kansas. The building was a two-story brick structure and was commonly known as the Syndicate Building. During the year 1954 the lower floor of the building was occupied by the Kansas Gas and Electric Company, a Western Auto Supply Company store, and other business tenants, and the upper floor was rented to various residential tenants. The Syndicate Building is located in the business district of Pittsburg, a city with a population of approximately 21,000. The area in which the building is located was served by excellent transportation facilities during the year involved herein, and the building was within easy walking distance of the municipal parking lot. Sometime during the year 1954 the three stockholders of The Pittsburg Improvement Company decided to liquidate the corporation and distribute its assets to themselves. It was also decided that the stockholders would attempt to segregate their interests in the corporate properties, and that Arilla Moore and Edwina King would either purchase petitioner's interest in the Syndicate Building *14 or sell their interest in the building to petitioner. On September 27, 1954, the parties met in the office of the attorney representing Arilla Moore and Edwina King for the purpose of submitting and receiving bids on their respective interests in the Syndicate Building. Although both parties made bids based upon the price of the entire property, each party understood that only one-half of the amount bid would ultimately be paid for the other party's interest in the property. Bidding for the petitioner was conducted by her attorney. Prior to such bidding petitioner had instructed him in effect to outbid Arilla Moore and Edwina King; that regardless of the price bid by her opponents they "will find my pocketbook quite deep"; that "she was going to buy it"; that out of all the property her deceased husband and his partner had accumulated it was the only piece of such property she was going to be able to acquire and that therefore she was going to buy it. Petitioner opened the bidding with an offer of $70,000. Arilla Moore and Edwina King then bid $72,500, and the following bids were thereafter made by the parties: Amount of Bid
Party Making Bid
$ 75,000
Petitioner
77,500
Arilla Moore and Edwina King
80,000
Petitioner
82,500
Arilla Moore and Edwina King
85,000
Petitioner
87,500
Arilla Moore and Edwina King
90,000
Petitioner
92,000
Arilla Moore and Edwina King
93,000
Petitioner
94,000
Arilla Moore and Edwina King
95,000
Petitioner
96,000
Arilla Moore and Edwina King
97,000
Petitioner
98,000
Arilla Moore and Edwina King
99,000
Petitioner
100,000
Arilla Moore and Edwina King
*15 After the $100,000 bid had been made by Arilla Moore and Edwina King, petitioner offered $100,250 for the property. No further bids were thereafter made, and it was agreed that petitioner was to acquire the interest of Arilla Moore and Edwina King in the property for $50,125, one-half of the total amount bid by petitioner. On October 30, 1954, the corporation was dissolved and all of its assets were distributed to the stockholders in exchange for their stock. On the same date petitioner purchased the one-half interest of Arilla Moore and Edwina King in the Syndicate Building for $50,125. In petitioner's income tax return for the taxable year 1954 a value of $40,000 was assigned to petitioner's interest in the Syndicate Building representing one-half of the alleged value thereof. In determining the deficiency herein the Commissioner has assigned as the fair market value of petitioner's interest in that property an amount not less than $50,125. The fair market value ascribed to the building on petitioner's income tax return was based upon an appraisal made on October 5, 1953, by three individuals, who did not appear as witnesses in this case, in which they had determined the *16 fair market value of the property here involved as being $80,000. Subsequent thereto and shortly prior to the hearing of this case a qualified appraiser of real estate who was acquainted with the premises as of October 30, 1954, the date of its sale to petitioner, determined the fair market value of the Syndicate Building and the land upon which it stood to be $65,000 as of that date. The fair market value of the Syndicate Building and land which it occupied as of the date of its sale to petitioner was $100,000, and the fair market value of petitioner's interest therein on said date was $50,000. Opinion Respondent's computation of a deficiency in this case is based upon a determination of fair market value of petitioner's interest in the Syndicate Building and the land it occupied in accordance with the price petitioner paid to acquire the same as shown by our findings of fact. Petitioner contends that because of her emotional involvement with respect to acquisition of the property, arising because of a sentimental value she placed thereon, she cannot be said to have been a willing purchaser acting without compulsion and, therefore, that the sales price relied upon by the respondent *17 is not evidence of the fair market value. It is true that we have held that a sale wherein peculiar circumstances tended to inflate the price at which property is sold is not a proper measure of fair market value. See Estate of A. Plumer Austin, 10 B.T.A. 1055. However, it is not true, as is contended by petitioner, that there is no evidence of fair market value in this case other than that provided by petitioner's expert appraiser. We think the crucial evidence here is the offer to purchase made by Arilla Moore and Edwina King at the time of the bidding for the property. They bid $100,000. There is no showing here that they made other than a willing offer to purchase or that they were under any such compulsion as petitioner has been shown to have been. Nor are they shown to have been without full information concerning the property. We conclude, therefore, that had the petitioner failed to increase her bid by $250, an arm's-length sales transaction would have occurred at that time based upon sale price of $100,000. It is reasonable to conclude also in the absence of any proof by petitioner to the contrary that the offer to purchase by Arilla Moore and Edwina King was *18 not inflated because of any knowledge on their part of petitioner's intention to acquire the property at any price. In fact, it seems clear to us that the true measure of such compulsion as did operate upon the petitioner with respect to her bid of $100,250 is represented by the $250 by which her bid exceeded the last bid of Arilla Moore and Edwina King. It is also worthy of note that the opening bid of $72,500 by Arilla Moore and Edwina King exceeded by $7,500 the fair market value placed upon the premises by petitioner's expert witness and that petitioner's opening bid exceeded that appraisal by $5,000. We are unable to give any significant weight to the appraisal of the fair market value of the premises made by the three individuals upon whose appraisal petitioner based the value of her interest therein in her income tax return. The record does not disclose the qualifications of those appraisers to value the property involved nor does it disclose the purpose of such valuation. We have therefore found as a fact that the fair market value of the Syndicate Building together with the land it occupied as of October 30, 1954, was $100,000, and that the fair market value of petitioner's *19 interest therein on that date was $50,000. Decision will be entered under Rule 50.